IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RICHARD DAVID REUTER          §
    REG. NO. 04271-180          §
v.                                          §          C.A. NO. C-06-259
                               §
BUREAU OF PRISONS              §

**AMENDED MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this civil action, plaintiff claims that the Federal Bureau of Prisons ("BOP") has failed to maintain proper records in his Inmate Central File as required by the Privacy Act, 5 U.S.C. § 552a, and that the repeated mistakes have led to serious adverse consequences that have cost him $50,000 in actual damages. (D.E. 1). The government moves to dismiss plaintiff's complaint for failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted. (D.E. 9). Plaintiff has not filed a response in opposition to the motion.[1]

Because the government relies on matters outside the pleadings, the motion to dismiss is construed as a motion for summary judgment. See Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, it is respectfully recommended that defendant's motion for summary judgment to dismiss plaintiff's complaint be granted, and that plaintiff's claims be dismissed with prejudice.

---

[1] Pursuant to Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition."

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL HISTORY

On June 23, 2006, plaintiff filed this action.  (D.E. 1). On September 21, 2006, defendant filed a motion to dismiss. (D.E. 9).  This motion, however, was interpreted by the Court as a motion for summary judgment because it included citations to evidence outside the pleadings.  (D.E. 11).  Based on this interpretation, on January 29, 2007, plaintiff was provided with twenty additional days in which to respond to defendant's motion. Id.  To date, plaintiff has not filed any response.

## III.  BACKGROUND FACTS

On March 10, 2004, plaintiff was sentenced to 36 months in the BOP for violation of his supervised release term.  (POC[2] at 3).  He was assessed a "greatest severity" public safety factor based on one of his underlying violations, evasion of a motor vehicle, and assigned to the Federal Correctional Institution ("FCI") in Three Rivers, Texas, a medium custody prison, with a total initial custody classification score of 13 points.  (POC at 4).

In a facsimile dated November 2, 2004, the Caldwell County Sheriff's Office sent a detainer request to FCI Three Rivers, and

---

[2] "POC" refers to Plaintiff's Original Complaint, D.E. 1.

thereafter, a detainer was lodged against plaintiff on the
underlying charge of theft, in Caldwell County Cause No. 04-187.
(POC at 4).  The November 2, 2004 fax also noted that the charge
for evading arrest with a vehicle, also raised in Caldwell County
Cause No. 04-187, had been dismissed because the District
Attorney had declined prosecution.  (POC, Ex. 1).

     By letter dated July 8, 2005, Doris Jones, a BOP Inmate
Systems Manager, wrote to the Caldwell County District Attorney
and inquired as to the intentions concerning the pending theft
charges against plaintiff in Cause No. 04-187.  (POC, Ex. 2).
She pointed out that Caldwell County had not timely prosecuted
the charges against plaintiff that were referenced in the
detainer.  Id.

     On April 24, 2006, plaintiff filed a Request for
Administrative Remedy, BOP Form BP-9, complaining to the FCI
Three Rivers warden, Joe Driver, that the Caldwell County
officials had violated the terms of the Interstate Agreement on
Detainers Act, because the detainer lodged against him had
expired, yet it remained in his Central File.  (D.E. 9, Sweaney
Decl., Ex. B.)  He requested that Warden Driver have the detainer
removed, that his custody classification be reduced to a more
favorable level because it was erroneously enhanced based on
charges that were dismissed, and that a Halfway House packet be
completed so that he could be considered for placement in a

-3-

Halfway House facility.  Id.  By response dated May 25, 2006,
Warden Driver denied plaintiff's BP-9 request.  (D.E. 9, Sweaney
Decl., Ex. C).

On June 27, 2006, plaintiff filed a Regional Administrative
Remedy Appeal with the Regional Director raising the same claims.
(D.E. 9, Sweaney Decl., Ex. D). The Regional Director denied his
BOP Form BP-10 request.  (D.E. 9, Sweaney Decl., Ex. E.).

On June 23, 2006, plaintiff filed this action.  (D.E. 1).
In his original complaint, he alleged that the BOP should have
removed the Caldwell County detainer from his Central File
because Caldwell County failed to bring him to trial on the
charges in the allotted time.  He argues that the BOP chose to
leave the detainer in his Central File, thus maintaining
inaccurate records.  He further alleges that the BOP wrongfully
used the evading arrest charge, that was eventually dismissed, to
calculate his custody classification, and that had it not done
so, he would have been confined at a low-security, and ostensibly
more desirable, facility.  Finally, he argues that the BOP has
failed to process a Halfway House release packet.  He seeks
compensatory damages of $50,000, plus court costs. (POC at 24).

## IV.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is no genuine issue as
to any material fact and the moving party is entitled to judgment
as a matter of law. Fed. R. Civ. P. 56(c).  A genuine issue

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment

evidence.  <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  <u>Caboni</u>, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  <u>Anderson</u>, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary
judgment." Id. at 248.

## V.  DISCUSSION

**A.   Plaintiff Failed To Exhaust Under 42 U.S.C. § 1997e(a).**

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).[3]

The exhaustion requirement applies to *all* inmate suits about
prison life, whether involving general circumstances or specific
incidents. Porter v. Nussle, 534 U.S. 516, 524 (2002).
Moreover, a prisoner is required to exhaust his administrative
remedies even if damages are unavailable through the grievance
process. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001);
Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The
exhaustion requirement is not jurisdictional. Underwood v.
Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (per curiam).
Dismissal without prejudice is appropriate where the exhaustion
requirement has not been met. See id. at 296.

---

[3] The government cites to the exhaustion provisions of 28 U.S.C.
§ 2241, (D.E. 9, at 3), but plaintiff did not file this action as a
habeas corpus proceeding, nor has it been treated as one by the Court.

The government moves to dismiss plaintiff's complaint for failure to exhaust fully his administrative remedies.

The BOP provides a three-tiered administrative process by which inmates can present a complaint.  28 C.F.R. § 542.10 et. seq.  First, the inmate must present the complaint informally on a Form BP-8 to a staff member at the facility where he is housed. 28 C.F.R. § 542.13(a).  If this informal procedure does not resolve the issue, the inmate then commences the three-tiered administrative remedy procedure by filing a formal written complaint on a Form BP-9 with the warden at the local level.  28 C.F.R. § 542.14.  If unsatisfied with the warden's response, the inmate may submit an appeal on Form BP-10 within twenty days of the response to the regional director.  28 C.F.R. § 542.15.  If unsatisfied at the regional level, then the inmate has thirty days from the date of the regional director's response to submit an appeal on Form BP-11 to the general counsel.  Id.  The appeal to the General Counsel is the final administrative appeal provided by the BOP.

In this case, the undisputed evidence establishes that plaintiff pursued his administrative remedies through the regional level by filing his BP-8, BP-9, and BP-10 requests for administrative remedies, and received responses from the warden and the regional director.  (See D.E. 9, Sweaney Decl., Ex. B, C,

D, and E).[4]  However, he did not pursue his claim through the
final step of the appeal process, to the general counsel.  (See,
D.E. 9, Sweaney Decl. at ¶ 7).  Thus, plaintiff has failed to
exhaust his administrative remedies.

        The Fifth Circuit has recognized that the exhaustion
requirement may, in rare circumstances, be excused where
dismissal would be inefficient or would not further the purposes
of the PLRA.  Underwood, 151 F.3d at 296.  For example,
exhaustion may be excused where irregularities in the prison
administrative system itself prohibited the plaintiff from doing
so.  Id. (citing Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir.
1990)).  An administrative remedy is not available where prison
officials ignore or interfere with the prisoner's pursuit of
relief.  Id. (citing Holloway v. Gunnell, 685 F.2d 150, 154 (5th
Cir. 1982)).

        In this case, in not filing a response, plaintiff has failed
to offer any explanation as to why he did not pursue his
administrative remedies to their conclusion.  Moreover, the fact
that he filed his BP-8, BP-9, and BP-10 is some evidence that he
understood the administrative process and knew how to avail
himself of it.  There is no evidence that he was in any manner
prevented from pursuing his administrative remedies.

_____

        [4]Although the record does not contain a copy of plaintiff's informal
BOP Form BP-8, it is clearly referenced in his BOP Form BP-9, and
defendant does not dispute that it was filed.

The evidence also suggests that plaintiff had no intention of pursuing his administrative remedies to completion.  He filed this action on June 23, 2006.  (<u>See</u> D.E. 1).  However, his Form BP-10 grievance was not denied by the Regional Director until August 28, 2006.  (<u>See</u> D.E. 9, Ex. E).  That is, he filed this lawsuit before he had even received an answer from the Regional Director on his claims.  It appears that plaintiff had no plans to bring his claims to the General Counsel through the filing of a Form BP-11.

Plaintiff has failed to exhaust his administrative remedies, and there are no grounds to excuse exhaustion.  Thus, it is respectfully recommended that the government's motion for summary judgment to dismiss plaintiff's complaint for failure to exhaust administrative remedies be granted, and that plaintiff's claims be dismissed.  Because plaintiff would now be time barred from pursuing his claims administratively, it is respectfully recommended that the dismissal be with prejudice.  <u>See</u> <u>Marsh v. Jones</u>, 53 F.3d 707, 710 (5th Cir. 1995) (district court has the authority to dismiss unexhausted claims with prejudice if they would be administratively time barred).

**B.   Plaintiff Failed To State A Claim.**

Alternatively, plaintiff's action should be dismissed for failure to state a claim upon which relief can be granted.  He claims that BOP officials intentionally relied upon inaccurate

records to raise his security classification, in violation of the
Privacy Act, 5 U.S.C. § 552a.  He asserts that as a result of the
BOP's inaccurate record keeping and its failure to remove the
detainer and dismissed charge from his Central File, he was
confined in a medium-security, rather than low-security, prison,
which rendered him ineligible for placement in a Residential Re-
entry Center, also known as a Halfway House.

Plaintiff's Privacy Act claim requires proof that defendant
"willfully or intentionally" failed to correct inaccurate
information about his sentence, and that the information was
erroneously relied upon to **establish** his security classification.
See 5 U.S.C. § 552a(g)(1)(4); Whitley v. Hunt, 158 F.3d 882, 889
(5th Cir. 1989), abrogated on other grounds, Booth, 532 U.S. at
735.  In this case, the evidence shows that, at the time
plaintiff's security classification was **established**, the evasion
of arrest and theft charges were pending against him, and in
fact, these charges, in part, contributed to the revocation of
his supervised release term.  (See D.E. 9, Ex. F).  Moreover,
plaintiff admits that these charges were pending at the time his
security classification was determined:

> Based upon the severity of the alleged
> offense of "Evasion," the defendant assessed
> a 7 point "Greatest Severity" Public Safety
> Factor against the Plaintiff's Custody
> Classification Score which resulted in the
> plaintiff's designation to a medium facility
> – FCI Three Rivers – pursuant to an assessed

-11-

total initial Custody Classification Score of
13 points.

(POC at 4).  It was not until November 4, 2004, that the Caldwell
County District Attorney moved to dismiss the evasion of arrest
charge and filed a detainer on the theft charge.  (See POC, Ex.
1).  The detainer was then valid for 180 days, or until early May
2005.  In **establishing** plaintiff's classification custody, the
BOP relied on accurate information.  Thus, plaintiff fails to
state a Privacy Act claim because he cannot show that the BOP
knowingly relied on false information in **establishing** his custody
classification, and in fact, it relied on accurate information.

Plaintiff suggests that, under the Privacy Act, the BOP was
required to make changes to his Central File to reflect the
expiration of the detainer and the fact that the evasion of
arrest charge was dismissed.  However, according to 28 C.F.R.
§ 16.97(a), the Privacy Act specifically exempts the Inmate
Central Record System from having to remove or change information
in an inmate's file.  See 5 U.S.C. § 552a(c)(3) and (4), (d),
(e)(2) and (3), (e)(4)(H), (e)(8)(f) and (g).

Finally, it is important to note that an inmate has no
protected liberty interest in his classification.  Wilkerson v.
Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003) ("This circuit has
continued to hold post-*Sandin* that an inmate has no protectable
liberty interest in his classification.").  Nor does he have a

constitutionally protected interest to be housed in a particular
prison.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996) (per
curiam) (citing Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983)).
Thus, even if the inaccurate records resulted in adverse
decisions regarding his placement, because he has no protected
interest in his classification or housing, he fails to state a
claim upon which relief can be granted.  See generally Sandin v.
Conner, 515 U.S. 472, 484 (1995) (due process does not protect
every change in the conditions of confinement having a
substantial adverse impact on the prisoner, but rather those
changes that impose atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life).
The fact that the BOP did not later go back and *change*
plaintiff's classification custody to reflect that the evasion
charge had been dismissed, or that the detainer had expired fails
to state a constitutional violation because plaintiff has no
protected liberty interest in his classification status.
Wilkerson, 329 F.3d at 436.  The fact that an expired, unenforced
detainer and a dismissed charge remained noted in plaintiff's
Central File does not present the type of atypical hardship that
triggers the due process clause.  Sandin, 515 U.S. at 484; Harper
v. Showers, 174 F.3d 716, 719 (5th Cir. 1999).

Accordingly, it is respectfully recommended that plaintiff
has failed to establish a claim pursuant to the Privacy Act.

-13-

## VI.  **RECOMMENDATION**

For the foregoing reasons, it is respectfully recommended that defendant's motion for summary judgment, (D.E. 9), be granted, and that plaintiff's claims be dismissed with prejudice for failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted.

Respectfully submitted this 26th day of February 2007.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

-14-

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).